Case number 251287 Jordan Danski versus Gary Miniard argument not to exceed 15 minutes per side. Mr. Nyamfukuza, you may proceed for the appellant. Good morning your honors. May you please the court. My name is Takura Nyamfukuza. I've shot here Nyamfukuza and with the court's permission I'd like to reserve three minutes for rebuttal. Noted. Thank you. I will spend the remainder of my time explaining the two primary reasons why the district court erred when it denied Mr. Danski's petition. First, the trial court's sua sponte supplemental jury instruction deprived Mr. Danski of his procedural due process and right to trial by jury. Second, there was insufficient evidence presented to convict Mr. Danski beyond a reasonable doubt of committing a home invasion or unlawfully driving away the automobile. Turning to my first point, during closing argument the prosecutor railed against Mr. Danski's some other guy did it defense. She complained that he was pointing the finger at some poor dead guy and said that any suggestions or assertions that someone else was involved were concocted. Consistently and vigorously the government insisted that Mr. Danski acted alone and there was nobody else involved. The district court's reliance on Lopez versus Smith in this case was improper because Mr. Danski's circumstances were very different from that case for a few reasons. Wasn't he charged at the outset though as an aider and a better? Wasn't that in the indictment? Throughout the trial, he may have been, but throughout the trial, the prosecutor argued vigorously against that. So the point, if I may make my point about Lopez versus Smith, I think that will show why it is that it was a problem in this case. In that case, the prosecutor was the one who requested that additional instruction. And also in that case, there were multiple theories and the prosecutor focused more on one. But in Mr. Danski's case, again, in closing arguments and throughout, the argument was that nobody else was involved. So, but was it not the case that number one, the indictment had language suggesting there was potentially, like putting Mr. Danski on notice of potential accessory liability. And then Mr. Danski's primary defense at trial was to point to his roommate and say, I was not involved, this other person was. If that's true, why wasn't there then through Mr. Danski's evidence a sufficient evidentiary basis for the district court, for the trial court to instruct as to kind of accessory aider and a better liability based on what the evidence Mr. Danski put in? Actually if your honor looks at the transcript from when the trial court was striking the first paragraph from jury instruction 8.1, it said, well, I'm removing paragraph number one because he wasn't specifically charged as an aider and a better. And also at that point, Mr. Danski no longer had the opportunity to address those arguments in hindsight. Unlike Lopez versus Smith with that additional instruction was given granted post-closing of proofs but before closing arguments so that defense counsel was able to and in fact did address the arguments. That was impossible in this case. And there's no way that trial counsel could have been effective and have been expected to anticipate a trial by ambush that was initiated by the trial court. So it impinged on his fifth, sixth, and fourteenth amendment rights and that's how his due process was violated in this case and it was structural error. Is there a, well tell me about the authority that says that this type of alleged error is somehow a violation of his rights. You know, wasn't on notice other than the charging documents, wasn't focused on at trial and then you know the trial court jumps up and adds this instruction. You're saying that's a violation of his rights. What authority do we have? Well, he certainly has the right to notice and cases abound with regard to notice. We have Cole versus Arkansas, no principle of procedure or due process is more clearly established than the notice of the specific charge and a chance to be heard in a trial of the issues raised by that charge. And here again, the trial court itself said he wasn't specifically charged in this matter, so I'm striking that first paragraph from jury instruction 8.1. And defense counsel objected for reasons that I'm emphasizing here. He said, look, even in closing arguments, the prosecutor said it was nonsense, it was concocted, so there's no way that you can fix it. And the trial court. I think Judge Hermendorfer's point was there was other evidence that Mr. Dansky brought to the table that could have supported an aiding and abetting instruction. I mean, it's not just what the prosecutor says, it's what the evidence shows at trial. All of it is what a district judge might, trial court judge might instruct the jury on. I understand the close point. However, Mr. Dansky's defense was that he didn't do it at all. And aiding and abetting, mere presence, and even accessory after the fact are completely different defenses. And the theory that was advanced vigorously and consistently at the trial was that he acted alone. And his defense is, no, not me, I wasn't there. There was plentiful physical and eyewitness evidence that put both Dansky's roommate and Dansky in the stolen car. There was DNA evidence in the car. So if I think that the evidence at trial suggested, even though Mr. Dansky said it was someone else, not me at all, that two people maybe were involved, then the jury comes back to the trial court with a question that suggests they also think the evidence is that Mr. Dansky and someone else might have been involved. At that point, we wouldn't have been incorrect under Michigan law to not instruct on aiding and abetting, because aiding and abetting, you are guilty of the substantive offense if you are an aider and abetter under Michigan law. Well, I would respectfully disagree, because the trial court itself said, you know what, neither party suggested this or presented proofs that would speak to it. But the jury seems to be insinuating it. So I think the way the proofs played out are... So where did the jury get that from, you think? Respectfully, I wasn't in the room, so I wouldn't be speculating. You don't deny that there's evidence that put both, I think the roommate Moore, maybe, and Mr. Dansky in the car? The decedent. I think we have a great case for 12 days later that he was perhaps in possession of a stolen vehicle, but home invasion and unlawful driving away of an automobile 12 days earlier, those are completely different. Receiving and concealing, perhaps, but the case for home invasion, I don't think. This kind of goes to the second issue, Your Honor, and I'll speak on that. I think there too, there was insufficient proof presented. There's nothing, no physical evidence whatsoever that put Mr. Dansky inside the house. There was no video surveillance. There was no eyewitness testimony. His fingerprints, his DNA were not found in the home. All we have is him in possession of a car some 288 hours later. The attenuation is significant. So again, if the charge is being in receipt of stolen or possession of stolen property or receiving and concealing, that's a different case, but that's not what he was charged and that's not the argument that was made throughout the trial. Let's say we agree that the evidence was then. Do you concede that we're looking at this through the lens of AEDPA? It's a habeas case? It is, Your Honor. Okay, thank you. Yes. And to my point about how this trial court's surreptitious decision impinged on Mr. Dansky's due process is everything from voir dire up to the point of the deliberations would have been different. Different questions would have been posed off the veneer. The cross-examination would have been different, and to Your Honor's point about him being put on notice because of what was in the complaint, felony charging information. In the same way that the government does not have to play whack-a-mole and extinguish every potential argument, Mr. Dansky doesn't carry the burden of proof. After the government rested, he understood what it was that they were arguing. He addressed that and said, it wasn't me. He doesn't have to put on proofs for every potential argument. And that is not raised like in Lopez v. Smith by the government, but here it was the trial court that made that surreptitious decision. And by butchering the jury instruction, that should have been the first clue where the judge said he wasn't charged specifically with this, so I'm going to remove it. The judge should have taken pause and said, maybe I shouldn't do it because neither party presented arguments that way, as the judge went on to say. Additionally, as I pointed out earlier, mere presence isn't enough. Accessory after the fact in aiding and abetting is insufficient. I should note that the Attorney General places more weight on Mr. Dansky's cell phone records than they can bear. There was no pinpoint location. It didn't show his movements as was improperly claimed. And switching towers does not equate to movement. Everybody in this courtroom right now is probably having their cell phone. Mine isn't on, but after I leave this courtroom, once I turn it on, my phone will likely be pinging on the same towers as each of your honors. But that does not mean 12 days later, if something is found somewhere near me, that I committed anything that would land me in the crosshairs of any prosecutor. And unless the court has questions for me, I will reserve the remainder of my time for rebuttal. Thank you. Thank you. Good morning, your honors, and may it please the court. Assistant Attorney General Scott Shimkus appearing for respondent. Your honors, the appellant's argument really was very zoomed in on minute details and things in this case, which aren't unimportant, but because of the context we're in with AEDPA, I think it's really important to zoom out. The appellant's argument focused so much on what happened in the trial court, but this court's review isn't necessarily of the trial court's actions or words. The review is on the Michigan Court of Appeals' affirmance of what the trial court did. And so as long as what the Michigan Court of Appeals determined was objectively reasonable, that fair-minded jurists could disagree, they could either agree or disagree, with what the Michigan Court of Appeals did here, then this court has to affirm. And the district court recognized that. The district court recognized that on both counts, for the jury instruction claim and the sufficiency claim, that the Michigan Court of Appeals reached reasonable decisions to reject both issues. And so what this court's looking at is not the specific words and actions of the trial court, but the Court of Appeals' analysis of what happened. And so, for instance, on the jury instruction claim, counsel focused a lot on this 8.1 subsection 1 that the trial court didn't include that in the instruction that he wasn't charged this way. The Court of Appeals recognized that and didn't find that that was any sort of error under state law because exactly as Your Honor's pointed out for the appellant's argument, the way this case was charged in the charging document did assist in or was a party to the taking of this vehicle. And I think it's also important to bear in mind that the jury instruction claim only has to do with the unlawful driving away of an automobile. It has nothing to do with the home invasion. And so knowing that the charging document for that charge is key. But in addition to that, and the Court of Appeals pointed this out as well, the jury was preliminarily instructed with that exact language. So at the very start of this trial, once the jury was impaneled, the jury was told that he has been charged essentially as a principal and an agoring abettor. The agoring abettor language, those words were not used, but the same language from the charging document was that he assisted in or was a party to. And I think it's important for this court to know where that is. That's on record 610 page ID 801, the jury's preliminary instruction. So again, at the start of trial, they were told to essentially be on the lookout for this, that it was either Mr. Dansky himself or that he assisted someone else in committing this crime. And I really think that, I mean, the district court really nailed this with Lopez v. Smith. I mean, that case, I think it really sinks Mr. Dansky's claim here, that the Supreme Court there said, it's not clearly established that a prosecutor's focus on one theory at trial vitiates an earlier notice of a different theory that the defendant was charged with or the jury was notified of, or really that the defendant was notified of. If it was, excuse me. For aiding and abetting, is that the UDAA itself encompasses aiding and abetting liability through its language, or that under Michigan law, like the law that was at issue in California, in Lopez, aiding and abetting under state law is just a part and parcel of committing the offense? I contemplated that as well, Your Honor, as I was preparing for this argument. And I think the answer really is both. So the statute specifically has this language of, you know, assisting or was a party to. So the aiding and abetting is sort of baked into the statute as a possible way of charging this. But Michigan also recognizes sort of independently that there is no distinction between principles and aiders and abettors. So similar to the California law, if you're charged as a principal, aiding and abetting sort of comes into that by itself because this distinction has been abolished in Michigan. Your opposing counsel was talking about, like, you're not charged as an aider and abetter, but under Michigan law, there's not like a separate statute or separate charge that you would have expected because aiding and abetting liability is encompassed within the substantive liability for the offense. That's exactly right. So aiding and abetting, at least in Michigan, I think that's pretty consistent across the country is that it's a theory of liability. It's not a charge. And so it's not separately charged and certainly not in Michigan. Oh, yes, yes, please. It may not matter, but do I understand correctly the state initially charged Dansky and then he pled no contest to some charges and then you brought these more serious charges? There's reference to that in the briefing. I was going to say, Your Honor, my honest answer is I'm not sure if that was how the case began in that it culminated sort of in this trial. And again, you know, if we go back to the Michigan Court of Appeals opinion, they focused on how the charges were brought as far as the UDAA with the, you know, this Dick Assistinger was a party to. So I think the focus there is what matters.  Sure. But, yeah, my honest answer is I'm not sure. And I apologize for that. So, like I said, for the jury instruction claim, I think Lopez v. Smith is very instructive. I think with that case, it's very difficult for Mr. Dansky to prevail here. And the district court recognized that. As far as the sufficiency argument goes, I think one thing that's important to point out here is the district court cited this case, Brown v. Cote. It's a case from this court in 2009. And that essentially says that when we have a decision on the merits from the state courts and you're talking about a sufficiency claim, it's not even really for this court to look at whether a rational jury could, or a rational juror could find guilt. It's whether any reasonable jurist could agree with the Court of Appeals' decision to affirm the jury's verdict. And it's given the doubly deferential standard under AEDPA, it's nearly insurmountable, unless the evidence was just so completely devoid. And that's just not the case here. Between the cell phone evidence, and I know the appellant, Mr. Dansky, he really contests the cell phone evidence, but he did that exact same thing at trial. He made the exact same arguments at trial that he's making to this court. And it was for the jury to resolve those issues. The defense even had their own expert here on cell phones. And this debate happened right in front of the jury, and they resolved those conflicts in favor of guilt. And so because of not only the appellate context that we're in here, but the collateral appellate context that we're in, it's nearly impossible for Mr. Dansky to prevail on that claim. I'm happy to walk through the evidence, but I know that Your Honors have read these briefs and are very familiar with the facts. So really, unless Your Honors have further questions, I would be more than happy to answer them, but I don't want to waste the court's time either. Thank you, counsel. Thank you so much. I will speak to your question, Judge Ritz, regarding the initial convictions. That was for the 5th of July, and like I said, how receiving and concealing and being in unlawful possession is quite different than the theory at trial. So he was near the tail end of his sentence, and then they sprung these new charges on him. So they were going back in time on something that, for whatever reason, I don't know why they didn't address at the same time. Lopez is different from here because of when the jury instruction was given. In this instance, it was given post-deliberations, once deliberations had already begun. In Lopez, it was before closing arguments, so defense counsel could and did have the opportunity to argue against that theory. And it was who, the who, the person who raised the argument is also different. In Lopez, it was the prosecutor. Here it was the trial court. And if I'm understanding the Attorney General's argument, irrespective of what the government argues at trial, arguing against a particular theory, saying this person did it on his own, then it's okay for the courts to raise a different theory post-deliberation. That cannot be reasonable and fair-minded. So ignore how the case is tried and what was argued throughout. And because something was mentioned, a preliminary instruction was given, just ignore what the government argued. That cannot possibly be what the Supreme Court envisioned when it issued the Lopez decision. And with regard to Kuntz, 1984 case out of this court, there, even though Kuntz dealt with the original charging instrument, what I take away from Kuntz is the opportunity to prepare, to get ready for defense counsel to be able to address arguments, and that did not happen here. Because he could not possibly have, because deliberations had already begun. And unless the court has questions for me, I respectfully request that the district court's decision be reversed for the reasons I mentioned here and in the briefing. Thank you.